UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                           21-CR-200-LJV

v.                                                  SENTENCING MEMORANDUM AND
                                                    CHARACTER LETTERS
PEDRO MELENDEZ,

        Defendant.
_____

## INTRODUCTION

      Pedro Melendez, at age 28, has been on pretrial release for over two years on conditions which include home detention with electronic monitoring. During that time, he has been employed, providing financial support for his wife and children. He and his wife recently became parents to their fifth child. More importantly, Pedro has successfully participated in sex offender counseling thus demonstrating that following any period of incarceration he will remain committed to continuing counseling and staying on his path of rehabilitation.

      Pedro is extremely remorseful for his conduct. He makes no excuse for sexting on-line with an underage female. He explains the impetus for his conduct; it occurred during a troubling time in his marriage. And when his wife discovered his conduct, she told his friend, and the FBI was notified. When Pedro was arrested, he lost his job, was removed from the family home and had to live with his mother next door.

      Since his arrest, Pedro has been undergoing group and individual counseling and has made a lot of progress. He is grateful to talk about the shame and confusion he feels about his crime and his past. While on pretrial release he has been fully compliant with release conditions. These attributes, along with Pedro's demonstrated commitment to better himself through therapy

and his lack of any prior criminal history, make him an excellent candidate for a below guideline sentence. Pedro's case is the sort of case that begs scrutiny. The Supreme Court has mandated that modern penal courts must tailor punishments to not just fit a crime, but also to fit the offender. *See generally Williams v. New York*, 337 U.S. 241, 247-48 (1949).

Pedro Melendez is a defendant who should not be punished as severely as his calculated advisory guidelines range suggests. For all of the reasons set forth in this memorandum, Pedro respectfully requests a below guidelines sentence of five years, followed by a period of supervised release with conditions.

In support of his request for a sentence that is sufficient but not greater than necessary, we attach the following letters for the Court's consideration:

**Exhibit A**:   Letter from Pedro Melendez

**Exhibit B**:   Letter from Yelencia Melendez (mother)

## PROCEDURAL HISTORY

On March 30, 2022, Pedro Melendez plead guilty to a one-count Information charging him with attempted receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A). The statutory penalties carry a mandatory minimum of five years incarceration and a maximum of twenty years. Sentencing is presently scheduled for March 13, 2023.

## SENTENCING FACTORS

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the United States Sentencing Guidelines ("USSG") were no longer mandatory. Although the Court must still properly calculate and consider the advisory Guidelines range, the Court may not presume

this advisory range is reasonable and need only give this range fair consideration before imposing a sentence. *United States v. Jones*, 531 F.3d 163, 170 (2d Cir. 2008). The advisory Guidelines range now serves as merely an initial benchmark for sentencing, which is ultimately considered along with other 18 U.S.C. § 3553(a) factors. *See Rita v. United States*, 551 U.S. 338 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007); *Gall v. United States*, 552 U.S. 38 (2007). The section 3553(a) factors include: the characteristics of the offender and offense; the need for the sentence imposed; the legally available sentences; applicable policy statements of the Sentencing Commission; the need to avoid unwarranted sentencing disparity; and the need to provide restitution, where applicable. Section 3553(a) mandates that any sentence imposed be sufficient, but not greater than necessary to meet the basic goals of sentencing including retribution, deterrence, incapacitation, and rehabilitation.

In *Gall*, the Supreme Court made clear that sentencing courts have great discretion in formulating appropriate sentences. *Gall*, 552 U.S. at 51 (recognizing that the sentencing judge is in the "superior position" to impose a sentence based on the unique facts and circumstances of the case). "[I]n the end, [the Court] must make an 'individualized assessment' of the sentence warranted by § 3553(a) 'based on the facts presented.'" *Jones*, 531 F.3d at 170 (quoting *Gall*, 552 U.S. at 50). In determining an appropriate sentence, 18 U.S.C. § 3553 mandates the Court to impose a sentence that is "sufficient, but not greater than necessary." Therefore, if the district court concludes that either of two sentences would properly serve the statutory purposes of § 3553(a), the lesser sentence must be imposed. *United States v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006).

## ADVISORY GUIDELINES

The Presentence Investigation Report, Dkt. No. 47, calculates the same guidelines range as was anticipated in the written plea agreement. Namely, based on the cross reference in USSG §2G2.2(c), the calculations under USSG §2G2.1 apply and provide for a base offense level of 32. Added to the base offense level of 32 were the following enhancements:

+ 4 for an offense involving a minor under the age of 12;

+ 2 for use of a computer;

The addition of these specific offense characteristics results in a total offense level of 35 after accounting for a three-level reduction for acceptance of responsibility.  At a criminal history category of I, the resulting guidelines range is 168 to 210 months. While properly calculated, we urge the Court to reject this guidelines range and find a sentence that is sufficient but not greater than necessary given the individual consideration of Mr. Melendez's history and characteristics.

The Sentencing Guidelines apply a cross-reference in this case to Guideline §2G2.1, production of child pornography. The regular guideline for receipt of child pornography is contained at Guideline §2G2.2. The base offense level for the former guideline is 32, and the latter is 22. While he is not disputing the correctness of these guidelines, this still is a <u>10-level increase</u> that is not reasonable in light of Pedro's specific conduct. No child pornography was ever produced in this case.  If this 10-level guideline increase were taken away, Pedro's guidelines would be 57-71 months of imprisonment, instead of 168-210 months. This is quite a large discrepancy.

The Guidelines here would have the Court impose a sentence approaching the statutory maximum punishment for his offense – 20 years. This would be inappropriate -- given the offense and offender -- and would run counter to the 18 U.S.C. § 3553(a) factors.

The Court should also be aware that the guidelines have not been revised since 2018, because the Sentencing Commission has not had a quorum to revise them. On August 5, 2022, the US Senate confirmed, for the first time in more than three years, a voting quorum for the Sentencing Commission. Former Acting Chair of the Sentencing Commission, Senior District Judge Charles Breyer, recognized the difficulty facing sentencing courts as a result: "In addition, the Commission has been unable to provide guidance on a number of recent sentencing policy challenges, leaving the courts without uniform sentencing standards. The Sentencing Commission is vital to ensuring fairness and effectiveness of federal sentencing guidelines and policy". [1]

Several courts have since recognized that many of the guidelines are outdated, too severe, and not grounded in empirical research. This is especially the case with the child pornography guidelines. In *United States v. Bleu*, 930 F.3d 35 (2d Cir. 2019), the Court stated in regard to the child pornography guideline: "As always, we urge district courts to 'take seriously the broad discretion they possess in fashioning sentences under §2G2.2,' recognizing that it is a unique Guideline that can 'easily generate unreasonable results.' And, of course, while a district court 'must still give respectful consideration to the now-advisory Guidelines,' it has the discretion to 'tailor the sentence' as it sees fit, and to choose what it deems an appropriate sentence irrespective of the Guidelines range." *Supra* at 41. The guidelines have lost relevance and applicability because they have not kept up with the courts or sentencing policy.

---

[1] See Commission Regains a Quorum for the First Time in Three Years, Enabling it to Amend Federal Sentencing Guidelines, Issue Sentencing Policy, United States Sentencing Commission, News Release, August 5, 2022. https://www.ussc.gov/about/news/press-releases/august-5-2022 (last accessed January 19, 2022).

The blanket application of the sentencing guidelines in this case results in a sentence much greater than necessary to achieve the purposes of sentencing. Data extracted from the U.S. Sentencing Commission's "Individual Offender Datafiles" spanning fiscal years 2017 to 2021, demonstrates a total of 12 similarly situated defendants (that is defendants convicted of receipt of child pornography, but where the production guidelines were used to calculate the guidelines range and who, like Pedro Melendez, have no criminal history whatsoever).[2] Of those twelve cases, 11 received non-guideline sentences (or 91.6%) and 3 or (25%) received a sentence of 60 months – the very sentence requested here; and one of those receiving 60 months was here in the Western District of New York.

In addition, to the Sentencing Commission data, there are at least two cases out of the Western District of New York with facts strikingly similar to Pedro's case where the defendants were sentenced to the mandatory minimum of 60 months imprisonment despite the application of the cross-reference to production guidelines under USSG §2G2.1. First, on November 30, 2021, the Hon. Frank P. Geraci, Jr. sentenced defendant, Daniel Hays to 60 months imprisonment. *See United States v. Daniel Hays*, 21-CR-06099-FPG (2021 WDNY, Geraci, F.).[3] Mr. Hays engaged in inappropriate chats with a person they believed to be 11 years old (who was actually an

---

[2] The statistics contained in this paragraph are drawn from data extracted from the U.S. Sentencing Commission's "Individual Offender Datafiles" spanning fiscal years 2017 to 2021. The Commission's "Individual Offender Datafiles are publicly available for download on its website. U.S. Sentencing Comm'n, Commission Datafiles, https://www.ussc.t?ov/research/datafiles/commission-datafiles. Cases were filtered to *only include* (1) individuals who were sentenced using the §2G2.1 Guideline, (2) whose statutory mandatory minimum was five with a maximum of tweny (used as a proxy to capture those convicted of receipt or distribution of child pornography); and (3) individuals who, like Mr. Melendez had no criminal history. It is counsel's understanding that the Commission will replicate these results at the direct request of the Court.

[3] Given the date of sentencing in 2021, it is believed that this case is the one referenced above in the Commission Datafiles.

undercover officer). Mr. Hays then attempted to meet that person. Like Mr. Melendez, Mr. Hays had no prior criminal history. Second, just last month, on February 13, 2023, Judge Gerace sentenced defendant, Ryan Coyne to 60 months imprisonment. *See United States v Ryan Coyne*, 22-cr-6100-FPG (2022 WDNY, Geraci, F.). Mr. Coyne also engaged in inappropriate chats with a person he believed to be 11 years old (also law enforcement) and then went to meet that person. Mr. Coyne had no prior criminal history. It is respectfully submitted that Pedro Melendez also merits a 60-month sentence based on his history and characteristics and the circumstances of his conviction, especially when he made no efforts to meet up with the victim in this case.

Of course, despite Mr. Melendez's similarities with the individuals whose cases are filtered from the Commission's data, or those who have been previously sentenced in this district, his sentencing must ultimately be based on his own individual history and characteristics, as well as the nature and circumstances of his offense. Nevertheless, the foregoing analysis should serve to assure the Court that the guidelines in cases like Mr. Melendez's often produce results far greater than necessary to achieve the goals of sentencing. Pedro's actions are not deserving of a harsh guideline sentence. Yes, he should be punished, but he should not be grouped with others who commit far worse offenses. Moreover, a guideline sentence in this instance would represent a disparity between Mr. Melendez and other similarly situated defendants.

### **MR. MELENDEZ'S HISTORY AND CHARACTERISTICS AND HIS OFFENSE CONDCUT**

As this Court knows, part of every sentencing is recognizing that the defendant is more than the crime he committed. *See, e.g., United States v. Singh*, 877 F.3d 107, 122 (2d Cir. 2017)

("While there are many competing considerations in every sentencing decision, a sentencing judge must have some understanding of 'the diverse frailties of humankind.'") (citation omitted). The Court has wide discretion to consider a defendant's individual circumstances to decide whether a lengthy prison term is "necessary" to satisfy just punishment or to prevent further crimes by the defendant, and whether rehabilitation is needed. *See Tapia v. United States*, 564 U.S. 319, 327 (2011).

### A.  Pedro's Compliance on Release for Two Years

Pedro has been released under home detention since his arrest in January 2021. He has been allowed to work and has done well under the circumstances. Since the summer of 2021 he has been employed full-time as a line cook at Olive Garden on Military Road in Niagara Falls, providing the sole financial support for his family. Prior to his arrest in this case, Pedro has been employed his entire adult life. (See PSR paragraphs 92-96). He has not had a single violation of his release conditions.

Pedro has complied with his conditions of mental health treatment during his period of pretrial release. He participates in both group and individual counseling. He regularly speaks of the benefits he has received from treatment and reports that his family is supportive of his efforts.  See PSR ¶¶82-84.

### B.  Pedro's Offense Conduct and His Acceptance of Responsibility

Pedro's plea of guilty to attempted receipt of child pornography was occasioned by his conduct in sexting on-line with Victim 1 and asking her to send him sexually explicit images of herself.  While that conduct was certainly egregious and deserving of just punishment, a few

facts distinguish Pedro's case from other child pornography offenders which this Court routinely encounters. First, Victim 1 did not provide images of herself to Mr. Melendez and thus, this is truly an attempt case. Thankfully, Victim 1 need not have any ongoing fear that lude or lascivious images of her will be found on the internet for years to come. Second, a consent search of Pedro's electronic device did not reveal any child pornography – he did not have a collection of images as others convicted of this offense regularly hoard. Third, this is not a contact offense. There is no indication that Pedro ever had contact with a minor, and unlike the other "attempt" cases listed above, he made no effort to meet up with the victim here.

Of particular importance to the Court's consideration is Pedro's acceptance of responsibility and comprehension of the gravity of his actions. Unlike many defendants sentenced by this Court, Pedro has a piqued understanding not only of the wrongfulness of his conduct, but the negative consequences his conduct has had on others. Pedro accepted responsibility for his conduct even before he was confronted by law enforcement. When others in his gaming group found out about his conduct, he immediately apologized to the victim, and stopped all communication with her:

> The communications between the defendant and Minor Victim appeared to come to an end when they realized that "G" had become aware of their sexual conversations. Minor Victim asked, "Did you tell g?" the defendant answered in part by saying, "Nope my wife did." He went on to apologize to Minor Victim by saying: "[t]his was wrong and I was pushing boundaries." The messages between the defendant and Minor Victim on this account concluded at this point.

See PSR ¶ 25.

A few months later, when law enforcement came to his house, Pedro readily admitted his conduct, and he plead guilty, accepting full responsibility for his actions. When interviewed by the United States Probation Office Pedro further accepted responsibility:

> The defendant was interviewed by the probation officer on May 26, 2022, and he provided a statement wherein he admitted involvement in the offense. The defendant

9

stated that during the time he was engaged in the instant offense, he and his wife were struggling in their marriage. She would reportedly take his phone, and he felt suffocated. The defendant explained that he was actively trying to hurt his wife. He crossed a line and could not go back. His wife told the defendant's gaming group and then also informed the FBI. The defendant stated that he opened up to the agents that came to his door. After that, the defendant "dropped off" social media and his life is much better now. The defendant acknowledged that he feels badly about the contact, his wording, and his actions. He feels badly about what Minor Victim went through.

Pedro is extremely remorseful. In his letter to the Court, he reflects on how he regrets his actions and has a plan for a better future:

> I am extremely regretful that it took this situation to get my act together, I am sorry to everyone involve[d] in this. It still makes my stomach curl when I see how I was talking and acting. I was very angry and sad. I know that's no excuse but at the time had no way of communicating or expressing it, something I am happy to say I no longer have an issue with anymore. I know I can't change the past but I can still make a better future knowing this journey of improvement and regret will follow me and will only make my ambitions stronger. I only wish I could be with my family but I know once I am thru this chapter is to get back to them and do better.

*See* Letter of Pedro Melendez annexed hereto as Exhibit A. With the help of continued counseling, Pedro is learning how to deal with his personal struggles, issues that arise in his marriage and better ways of communicating:

> I have never thought I ever be in this situation. It has almost been 2 years since this journey started, I can positively say I am not the same man I was back then, I have improved myself non-stop thanks to my therapy, my support and myself. I am happy with who I am today and I am more grounded. I have improved my marriage and the bond with my family is stronger than ever. My family and the new friends have been the strongest support for me an they continue to make me better. *Id*.

### C. Collateral Consequences

Pedro will have to pay the price for his lapse of judgment. He will have to serve at least five years in prison for his actions, will now have a felony conviction, and will have to register as a sex offender in New York State when he gets out of custody. He also will have to be on federal

supervised release for a lengthy term and this will include sex offender treatment, as well as computer monitoring. All of these are collateral consequences that the Court should consider in adjudging its sentence.

There is nothing to indicate that Pedro will ever re-offend or pose a danger to the community. This is his first offense and he has learned his lesson the hard way. He also took responsibility for his actions early – and he readily entered a guilty plea, saving the Court and the government time and resources.

### D. Pedro's Lack of Criminal History

The fact that Mr. Melendez has never served a prison sentence suggests that an incarceration sentence within (or even near) the Guidelines range would be disproportionate. In *United States v. Mishoe,* 241 F.3d 214,220 (2d Cir. 2001), the Second Circuit stated: "Obviously, a major reason for imposing an especially long sentence upon those who have committed prior offenses is to achieve a deterrent effect that the prior punishments failed to achieve. That reason requires an appropriate relationship between the sentence for the current offense and the sentences ... for the prior offenses." While the *Mishoe* decision principally addressed the Career Offender Guidelines, the teaching of that decision applies here. *See United States v. Casteneda,* 191 F. App'x 15, 18 (2d Cir. 2006) (observing that *Mishoe* permits "a departure pursuant to § 4A1.3 ... 'if the sentencing judge determines, in the exercise of [his] discretion,' that the defendant's criminal history category 'overstates the seriousness of his criminal record.' (emphasis omitted) (quoting *Mishoe,* 241 F.3d at 215)). Where an individual has never been incarcerated prior to this offense, as is the case here, a sentence within or even close to the Guidelines range would be excessively severe. That is because there is no reason to believe in

such an instance that a prolonged period of incarceration would be more effective than a lesser sentence, because there is no point of comparison or historical example to disprove the efficacy of a lower sentence.

Pedro's lack of criminal history, coupled with his lengthy track record of pre-trial compliance - not one violation in more than two years of being on electronic monitoring with a curfew, undercuts any suggestion that Pedro is likely to return to any improper behavior when he is released from custody.

### E.　Pedro's Family Support

Pedro was originally released to home detention at his mother's residence. She willingly posted her house to secure his release. While on home detention, he was allowed to leave only for work, legal visits, medical appointments, and for visits with his children who reside next door with his wife. After demonstrating his compliance, he was given a modification of his release conditions to curfew which allowed him to have more regular supervised visits with his children to aid in their daily care.

As his family attests to, Pedro worries about his children. He has been their sole source of financial support. Although he knows that his family will help take care of the children while he is incarcerated, that burden weighs on him greatly.

### MR. MELENDEZ'S REQUEST FOR A NON-GUIDELINE SENTENCE

We ask the Court to consider whether the sentence to be imposed will provide Mr. Melendez with "correctional treatment in the most effective manner." A non-Guideline sentence would properly reflect that issue. A period of incarceration is justified. However, Mr.

Melendez's rehabilitation would never be best served through a lengthy period of incarceration. Indeed, if incarcerated and placed in the Sex Offender Treatment Program provided by the Bureau of Prisons, Mr. Melendez would not enter into the program until toward the end of his sentence. The rest of any period of incarceration would simply be punitive and of no benefit to any one or the community. Research has shown that sentencing sex offenders to prison has "little, if any impact on sexual and violent recidivism following release." K.L. Nunes et al., Incarceration and Recidivism Among All Sexual Offenders, 31 Law and Hum. Behav. 305 (2007). *See also Tapia v. United States*, 139 S.Ct. 2382, 2385-86 (2011) (sentencing courts may not impose or lengthen a term of incarceration for purposes of treatment in recognizing that "imprisonment is not an appropriate means for promoting correction and rehabilitation").

      Mr. Melendez's treatment regimen has to date been successful. (*See* United States Department of Justice, Center for Sex Offender Management, Understanding Treatment for Adults and Juveniles Who Have Committed Sex Offenses (2006) ([T]here is no compelling reason to conclude that specialized treatment and other rehabilitation interventions should be abandoned in favor of a sole reliance on more punitive approaches that have already been demonstrated as having very little impact on enhancing community safety"). We ask the Court to fashion a sentence which recognizes the seriousness of Mr. Melendez's offense and which provides specific and general deterrence. However, it is significant to note that Mr. Melendez has no prior criminal history and has been successful since he has been placed on pretrial supervision. As well, any conditions which will be placed post sentence upon Mr. Melendez, will also have serious consequences. He will have restrictions where he will live, work and travel. As noted, he will be required to register as a sex offender. He will have severe restrictions on his computer and internet use and will be ordered to comply with any and all conditions imposed by

the court and/or his probation officer. (*United States v. Garate*, 543 F3d 1026, 1028-29 (8th Cir., 2008) (the court may consider the lasting effects of being required to register as a sex offender).

We believe that a non-Guideline sentence far lower than the calculated range is appropriate and sufficient under the circumstances in light of Mr. Melendez's personal characteristics. He has fully accepted responsibility, he has continued to engage in post-offense rehabilitation, he will likely be accepted to the Bureau of Prisons Sex Offense Program once his sentence reaches approximately 18 months, and he will continue mental health and sex offender treatment once he is released from prison. As well, a significant period of supervised release and a requirement that he register as a sex offender should impact on the sentence the court will impose. *United States v. Autry*, 555 F3d 864, 875-76 (9th Cir. 2009). (A defendant's probationary sentence includes his registration as a sex offender, travel restrictions, internet restrictions, therapy requirements, computer restrictions and other negative consequences.).

A sentence of 5 years or in that range would be sufficient but not greater than necessary to fit the sentencing structure. Within that time, Mr. Melendez will receive all of the appropriate rehabilitation that he needs from the Bureau of Prisons. He is a high school graduate and works on a full-time basis. It is likely he will obtain employment immediately upon his release from prison and will faithfully continue counseling. There is nothing to indicate that Pedro will ever re-offend or pose a danger to the community. The Court should consider this in fashioning Mr. Melendez's sentence. We believe that a sentence lower than the Guideline range is firmly appropriate.

## **CONCLUSION**

The totality of the record proves that Pedro Melendez is not an ordinary defendant deserving of an ordinary Guideline sentence. The evidence before this Court establishes that a

sentence within the advisory Guidelines range is simply too harsh and that incarcerating Pedro within the advisory Guidelines will not further the purposes of sentencing. Pedro has already proven that he is able to go beyond what our justice system expects of its post-sentenced offenders. Pedro has shown genuine remorse, the ability to be rehabilitated, and the desire and dedication to become a better person. In sentencing him, he asks that you consider the sentencing guidelines, his crime and himself as a person.

Based on Pedro history and characteristics, his complete lack of a criminal history including the fact that he has never served a period of incarceration; his compliance with pretrial release conditions including his willingness to engage in and his active participation in counseling; his work history and his familial support, and sentence him to the minimum sentencing in this case - **60 months of confinement**, followed by a term of supervised release with the strict conditions noted on pages 18-19 of the PSR. This would be an adequate and individualized sentence for him in accordance with the 18 U.S.C. § 3553(a) factors.

**DATED**:   Buffalo, New York, March 2, 2023

Respectfully submitted,

**/s/ MaryBeth Covert**
MaryBeth Covert
Senior Litigator
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341, (716) 551-3346 (Fax)
marybeth_covert@fd.org
Counsel for Defendant Pedro Melendez

**TO:**   Caitlin Higgins
Assistant United States Attorney

Matthew Zenger
United States Probation Officer